# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI A. PASCO,<br><br>        Plaintiff<br><br>    v.<br><br>RED ROBIN GOURMET BURGERS, INC., et al.,<br><br>        Defendants.<br>_____ / | CASE NO. 1:11-cv-01402-AWI-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT THE CLAIMS AGAINST DEFENDANT MURPHY BE DISMISSED AND THAT PLAINTIFFS' MOTION FOR REMAND BE DENIED**<br><br>(Docket No. 8)<br><br>**OBJECTIONS DUE: 20 days** |

## I. INTRODUCTION

On September 20, 2011, Plaintiff Lori A. Pasco ("Plaintiff") filed a motion seeking to remand this action to state court. A hearing was held on November 2, 2011, regarding Plaintiff's motion. For the reasons set forth below, the Court RECOMMENDS that the claims against defendant David Murphy ("Murphy") be DISMISSED, and that Plaintiff's motion for remand be DENIED.

## II. BACKGROUND

**A.    Procedural Background**

On June 16, 2011, Plaintiff filed a complaint in Stanislaus Superior Court against Defendants Red Robin International, Inc. (erroneously sued as Red Robin Gourmet Burgers, Inc.) ("Red Robin")

and Murphy, Plaintiff's former immediate supervisor at Red Robin (collectively "Defendants").[1] Plaintiff alleges various violations of the California Fair Employment and Housing Act ("FEHA"), codified at California Government Code § 12000, *et. seq.*

On August 11, 2011, Defendants filed an answer to the complaint in the Stanislaus Superior Court. On August 22, 2011, Defendants filed a notice of removal. (Doc. 1.) Defendants assert in their removal that Murphy is a sham defendant and that his citizenship must be disregarded for purposes of assessing removal jurisdiction. (Doc. 1, ¶¶ 9-18.)

On September 20, 2011, Plaintiff filed a motion to remand the case to state court. (Doc. 8.) On November 2, 2011, the Court held a hearing on this motion. (Doc. 16.)

**B.    Factual Background**

Plaintiff alleges that she was hired by Red Robin on May 25, 2005, and was promoted to General Manager in 2006. (Doc. 1, Exh. A ("Compl."), ¶ 7.) Murphy was Plaintiff's immediate supervisor. (Compl., ¶ 7.) Plaintiff alleges her supervisors "knew or should have known" that she was treated and prescribed medication for anxiety in September 2006. (Compl., ¶ 8.) Plaintiff alleges that Murphy encouraged heavy "alcohol consumption" at work parties, management conferences, and work related trips held in Las Vegas. (Compl., ¶ 10.) Plaintiff asserts that "female employees were precluded from participating in certain events, such as golfing[,] while on these [Red Robin] trips, unless they could prove to drink 'like a man.'" (Compl. ¶ 10.) Plaintiff contends that she was also "told not to hire female employees that did not fit the 'profile'" of Red Robin; the "profile" included "'fit girls'" who were "'cute'" and "'young.'" (Compl., ¶ 10.) Plaintiff further alleges disparate treatment between male and female employees, stating that male employees were not reprimanded when they engaged in "acts of discrimination" including "display[ing] inappropriate behavior such as dating co-workers, smoking marijuana, sexual harassment, need for medical leave

---

[1] It appears that Plaintiff filed an Amendment to Complaint in the Stanislaus Superior Court on July 19, 2011, seeking to correct the name of Defendant Red Robin from Red Robin Gourmet Burgers, Inc., a California corporation, to Red Robin International, Inc., a Nevada corporation. (Doc. 1, p. 13.) The proposed order granting the amendment does not appear to have been approved by the state court prior to Defendants' removal. (Doc. 1, p.14.) The Court notes that the notice of removal and the pleadings for the instant motion refer to Defendant Red Robin as Red Robin Gourmet Burgers, Inc., and not as Red Robin International, Inc.; however, there does not appear to be a dispute that Red Robin is a Nevada corporation. The caption in this Findings and Recommendations thus references Red Robin in the manner currently adopted by the parties.

and being so intoxicated they were thrown out of [Red Robin] related events. However, female employees were terminated for these types of acts without prior counseling or disciplinary action." (Compl., ¶ 10.)

Plaintiff states that in 2007, she was "questioned by Murphy and a human resources employee regarding her mental disability." (Compl., ¶ 13.) On March 31, 2010, Plaintiff was further questioned by Murphy regarding her mental disability and her "need for a companion dog." (Compl., ¶ 13.) Murphy informed Plaintiff that she was "'forbidden' to bring the dog to the restaurant." (Compl., ¶ 13.) Plaintiff alleges that she later provided Murphy with copies of the applicable law allowing her to have a companion dog, which made Murphy "angry"; he "vocalized that anger to plaintiff in a phone conversation." (Compl., ¶ 13.) Plaintiff asserts that "Murphy proceeded on a fact-finding expedition that lasted nearly two (2) weeks which led to the suspension and eventual termination of Plaintiff." (Compl., ¶ 13.)

On April 23, 2010, Plaintiff filed a complaint against Red Robin with the California Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC") (the "administrative complaints"). (Compl., ¶¶ 18, 20.) The DFEH issued Plaintiff a "right to sue" notice against Red Robin on May 20, 2010, and the EEOC issued a "right to sue" notice on April 6, 2011. (Compl., ¶¶ 19, 21.)

On June 16, 2011, Plaintiff filed the instant action in Stanislaus Superior Court (the "judicial complaint"). (Doc. 1.) The judicial complaint alleges six causes of action, only two of which are against Murphy: the fifth cause of action for harassment in violation of California Government Code Section 12940(j)(3) and the sixth cause of action failure to prevent discrimination, harassment, hostility in the workplace, and retaliation in violation of California Government Code Section 12940(k). (Compl., ¶¶ 47-60.)

### III. DISCUSSION

**A.  Legal Standard – Remand**

"A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing 28 U.S.C. § 1441). It is presumed, however, "that a cause lies outside [the] limited jurisdiction [of

3

the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal quotation marks omitted).

"Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). The defendant always bears the burden of establishing that removal is proper, and the court "resolves all ambiguity in favor of remand." *Hunter*, 582 F.3d at 1042.

The propriety of removal requires the consideration of whether the district court has original jurisdiction of the action, i.e., whether the case could have originally been filed in federal court based on a federal question, diversity of citizenship, or another statutory grant of jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). If the case is within the original jurisdiction of the district court, removal is proper so long as the defendant complied with the procedural requirements set forth in 28 U.S.C. § 1446. If the case is not within the original jurisdiction of the district court, removal is improper. The absence of subject matter jurisdiction is not waivable by the parties. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951).

Federal district courts have original jurisdiction over cases where there is complete diversity of citizenship, i.e., between citizens of different states. *See* 28 U.S.C. § 1332(a). Further, a defendant may remove an action to federal court under Section 1332 provided no defendant is a citizen of the same state in which the action was brought. *See id.* § 1441(a), (b). An exception to the requirement for complete diversity exists, however, when a non-diverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). In that case, the district court may disregard a non-diverse party named in the state court complaint and retain jurisdiction if joinder of the non-diverse party is a sham or fraudulent.

**B.     Contentions of the Parties**

Defendants' notice of removal asserts that this Court has jurisdiction based on diversity under 28 U.S.C. § 1332(a)(1). Defendants state that Plaintiff is a citizen of California and that Red Robin, a Nevada corporation, is a citizen of that state. While Defendants admit that Murphy is a citizen of California, they argue that he is a fraudulent or sham defendant. Defendants contend that Plaintiff's

4

judicial complaint alleges causes of action against Murphy for harassment, but the administrative complaints filed with the DFEH and EEOC failed to assert a harassment claim. As such, Plaintiff failed to exhaust her administrative remedies regarding the alleged harassment, and the charges against Murphy are barred. The Court thus lacks jurisdiction over that particular claim. Defendants assert that Murphy must therefore be dismissed from this action, and the remaining parties – Plaintiff and Red Robin – are diverse.

Plaintiff's motion for remand asserts that removal was improper because diversity is lacking as Murphy is not a sham defendant. The California Fair Employment and Housing Act ("FEHA") allows for separate claims of discrimination and harassment, and Plaintiff's claim of discrimination includes the harassment she experienced due to Murphy's discriminatory conduct toward her. Plaintiff contends that it would be difficult to envision how the EEOC or DFEH would ignore evidence of harassment based on sex, age, and disability while investigating the claims for discrimination based on the same. Further, Plaintiff argues that a state court complaint that does not allege domicile or citizenship at the time of filing cannot be removed on grounds of diversity.

**C.    Murphy Is a Sham/Fraudulent Defendant**

    **1    Legal Standard – Fraudulent Joinder**

"Fraudulent joinder is a term of art" and does not require an ill motive. *McCabe*, 811 F.2d at 1339; *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983). Joinder will be deemed fraudulent where the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe*, 811 F.2d at 1339. The defendant alleging the fraudulent joinder carries the heavy burden of demonstrating the improper joinder. *See Hunter*, 582 F.3d at 1044.

In determining whether a cause of action is stated, typically courts "'look only to a plaintiff's pleadings to determine removability.'" *Richey,* 139 F.3d at 1318 (quoting *Gould Mut. Life Ins. Co. of N.Y.*, 790 F.2d 769, 773 (9th Cir. 1986)). Yet, where fraudulent joinder is an issue, the Ninth Circuit has directed that courts may go "somewhat further" by allowing a defendant to present facts showing that joinder is fraudulent. *Id*. The review of the complaint, however, is constrained to the

facts actually alleged therein; it does not extend to facts or causes of action that *could* be alleged via an amended complaint. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989) (affirming district court's refusal to consider allegations made in plaintiffs' unfiled, proposed amended complaint submitted as an attachment to a motion for reconsideration to determine whether valid claims had been stated for fraudulent joinder purposes (citing C. Wright & A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3739, at 580-81 (2d ed. 1985))); *Smith v. City of Picayune*, 795 F.2d 482, 485 (5th Cir. 1986) ("Generally, the right of removal is determined by the pleadings as they stand when the petition for removal is filed.").

In ruling on a motion for remand where fraudulent joinder is alleged, a court must evaluate the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *see also Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944) ("In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in the state court."). Federal courts in this circuit apply the fraudulent-joinder rule only in cases where it is indisputably clear that the plaintiff states no cause of action against the non-diverse defendant. *See Dominick's Finer Foods v. Nat'l Constr. Servs., Inc.*, No. CV10-00836-SVW (PWJx), 2010 WL 891321, at *2 (C.D. Cal. Mar. 9, 2010) (citing *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001); *Kruso*, 872 F.2d at 1427; *McCabe*, 811 F.2d at 1339; *Maffei v. Allstate Cal. Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006); *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1136-37 (S.D. Cal. 1998); *Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 249 (E.D. Cal. 1992); *Zogbi v. Federated Dep't Store*, 767 F. Supp. 1037, 1041-42 (C.D. Cal. 1991)).

    **2.**    **Plaintiff's Claims Against Murphy**

        **a.**    **Plaintiff's Judicial Complaint Against Murphy**

The complaint Plaintiff filed in the Stanislaus Superior Court alleges six causes of action, only two of which are against Murphy: the fifth cause of action for harassment in violation of California Government Code Section 12940(j)(3) and the sixth cause of action for failure to prevent discrimination, harassment, retaliation, and hostility in the workplace in violation of California

Government Code Section 12940(k). (Compl., ¶¶ 47-60.) Plaintiff alleges that she set forth the harassing and discriminatory acts to support these causes of action in Paragraph 11, subsections (a)-(m), of her complaint. (Compl., ¶¶ 48, 55.)

Paragraph 11 of Plaintiff's complaint provides examples of "conduct engaged in by Murphy and others" and indicates that this conduct "included, but was not limited to," the examples indicated. These examples include "giving incorrect or negative reports regarding the performance of plaintiff which were untrue and unwarranted," "inappropriately involving plaintiff in activities that exceed her job requirements and constituted discrimination and harassment on the plaintiff based on her sex," "insult[ing] and ridicul[ing] plaintiff regarding her need for a companion dog based on her mental disability," "express[ing] hostility and aggression towards plaintiff when plaintiff wanted to meet with management regarding the work environment and was specifically told not to 'open a can of worms' with her reported complaints," and "incit[ing] plaintiff's colleagues and managers to ostracize plaintiff whenever possible based upon her mental disability, age, and/or sex." (Compl., ¶ 11(a), (c), (f), (h), and (j).)

### b.     Plaintiff's Administrative Complaints with the DFEH and EEOC

Plaintiff filed complaints with the DFEH and EEOC on May 17, 2010. (Doc. 10, Tomlin Decl., ¶¶ 4, 6, Exhs. 1, 3.) Plaintiff checked boxes indicating that she was subject to discrimination based on sex, age, and retaliation. (Doc. 10, Tomlin Decl., ¶¶ 4, 6, Exhs. 1, 3.) Plaintiff's administrative complaints state that she had been employed as a General Manager with Red Robin since May 25, 2005, and was terminated on April 23, 2010. (Doc. 10, Tomlin Decl., ¶¶ 4, 6, Exhs. 1, 3.) Plaintiff described her discrimination as follows:

> On April 13, 2010, I was suspended during [a] pending investigation conduct. I am aware that another similarly situated individual, AJ Raabe, male, approximately 32, Assistant Manager, was investigated for fraternizing with another employee and work conduct but he was never suspended.
>
> During one of my interviews with Mr. Murphy concerning my investigation, a question came up that concerned my disability and accommodations. I explained to Mr. Murphy in detail about my disability and my occasional request for accommodation[;] he became very adamant about the accommodations. Shortly after the interview, I forwarded laws on the American with Disabilities [Act] to Mr. Murphy and [an] employer's requirement[] to accommodate disabilities like mine.

7

> On April 23, 2010, I met with Mr. Murphy and Don Dalton, male, 43, Vice President, and they terminated my employment for work policy violations. I am aware that Mr. Raabe was not terminated for policies he violated that were more severe than mine but rather he was demoted to an Assistant Manager. Respondent did not discipline me, nor offered to maintain my employment, such as a demotion or lateral move, as . . . was offered and accepted by Mr. Raabe.
>
> Respondent did not provide any reasons for its actions.
>
> I believe that I was discriminated because of my sex, female, age, 44, and retaliated against for engaging in a protected activity, in violation of my rights as protected by Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, and the American with Disabilities Act of 1990, as amended.

(Doc. 10, Tomlin Decl., ¶¶ 4, 6, Exhs. 1, 3.)

### 3. Plaintiff's Fifth Cause of Action Against Murphy for Harassment Fails Due to Plaintiff's Failure to Exhaust Her Administrative Remedies

Plaintiff's DFEH and EEOC complaints allege discrimination and retaliation based on sex, age, and failure to accommodate her disability. Plaintiff's administrative complaints do not indicate a claim for harassment, nor does she describe any harassing conduct by Murphy in her allegations.

#### a. Harassment and Discrimination are Separate Claims Under the FEHA

Plaintiff's fifth cause of action is against Red Robin and Murphy for harassment in violation of the FEHA. The FEHA makes it an unlawful employment practice for an employer, "because of the . . . physical disability, mental disability, . . . sex, [or] age . . . of any person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). Further, it is an unlawful employment practice for an employer, "because of . . . physical disability, mental disability, . . . sex, [or] age, . . . to harass an employee." *Id.* § 12940(j)(1).

An individual employee of an entity subject to the FEHA can be held personally liable for harassing behavior that is outside or extraneous to his job duties. *Id.* § 12940(j)(3) ("An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action.")

The California Supreme Court has differentiated discriminatory conduct from harassing conduct under the FEHA for purposes of a supervisor's personal liability. Discriminatory conduct

arises out of actions that are inherently necessary to perform a supervisor's job. Harassment arises out of conduct that is outside the scope of necessary job performance and "presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Jones v. Lodge at Torrey Pines P'ship* (*"Jones"*), 42 Cal. 4th 1158, 1164 (2008) (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996)). This distinction is the basis for the differing liability structures. While a supervisor or other employee may be personally liable for harassment (conduct outside the scope of his job duties) under Section 12940(j), a supervisor is generally not personally liable for discriminatory conduct that arises within the scope of his job duties under Section 12940(a). *Reno v. Baird*, 18 Cal. 4th 640, 644 (1998). Nonetheless, in some hostile work environment claims, the hostile message that constitutes harassment may be "conveyed through official employment actions," and evidence that would otherwise be associated with a discrimination claim can form the basis of a harassment claim. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 708 (2009) (citing *Miller v. Dep't of Corr.*, 36 Cal. 4th 446 (2005)*,* and holding that *Miller* is "wholly consistent" with *Reno*, 18 Cal. 4th at 645-47).

### b. Plaintiff Must Exhaust Administrative Remedies for All Claims Before Filing Suit

To assert a claim "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1612 (1995) (citation and internal quotation marks omitted). For purposes of "reporting an unlawful employment practice, an administrative remedy is provided by the FEHA." *Id*. As such, a statutory prerequisite to filing a lawsuit under the FEHA is the filing of a DFEH charge. *Id.* at 1613; Cal. Gov't Code § 12960. As the court noted in *Okoli*:

> [I]n the context of the FEHA, exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts: Under California law an employee must exhaust the . . . administrative remedy provided by the Fair Employment and Housing Act, by filing an administrative complaint with the [DFEH] . . . and obtaining the DFEH's notice of right to sue before bringing suit on a cause of action under the act or seeking the relief provided therein.

*Okoli*, 36 Cal. App. 4th at 1613 (citing *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1724 (1994)) (internal quotation marks omitted.)  Further, for a plaintiff to exhaust "her administrative remedies as to a particular act made unlawful by the Fair Employment and Housing Act," she "must specify *that* act in the administrative complaint, even if the complaint does specify other cognizable wrongful acts." *Id*.

        **c.    Claims Not Alleged in the DFEH or EEOC Complaints Must be Reasonably Related to the Claims Alleged and Reasonably Discoverable During the Course of an Agency Investigation**

The courts have held, however, that a plaintiff is "allowed . . . to pursue claims not included in [her] DFEH charge that were 'like or reasonably related to' the claim that was made.'" *Okoli*, 36 Cal. App. 4th at 1616; *see also Baker v. Children's Hosp. Med. Ctr.*, 209 Cal. App. 3d 1057, 1062-65 (1989).  Such claims are allowed if "it is reasonable that an investigation of the allegations in the original DFEH complaint would lead to the investigation of subsequent discriminatory acts undertaken by respondents in retaliation for appellant's filing an internal grievance." *Baker*, 209 Cal. App. 3d at 1065.

The Ninth Circuit has taken a similar view.  In *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569 (9th Cir. 1973), the court held that "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Id*. at 571.[2]

For Plaintiff to have pled a viable claim against Murphy, her administrative complaints with the DFEH and EEOC must have either alleged Murphy's harassment or his conduct must have been reasonably related to the acts pled in the administrative complaints such that an investigation of those acts would have led to the discovery of Murphy's alleged harassment.  As discussed above, Plaintiff did not allege a harassment claim against Murphy in her administrative complaints.  (Doc. 10, Tomlin Decl., ¶¶ 4, 6, Exhs. 1, 3.)

---

[2] The California courts have determined that since the "administrative objectives and public policy purposes" of the FEHA and Title VII of the federal Civil Rights Act of 1964 "are the same," California courts "may rely on federal decisions to interpret analogous parts of the state statute." *Okoli*, 36 Cal. App. 4th at 1614, n.3.

Plaintiff must therefore show that the harassment claim would "reasonably be expected to grow out of" the "scope the complaint" of discrimination filed with the DFEH and EEOC. *Okoli*, 36 Cal. App. 4th at 1615 (citing *Sanchez v. Standard Brands*, 431 F.2d 455, 466 (5th Cir. 1970) (noting that *Sancehz* is "the leading case[] setting forth the standard under which allegations of the EEOC charge limit the scope of a subsequent judicial action"). The court in *Sanchez* provided the rationale for this standard:

> The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation. Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Sanchez*, 431 F.2d at 466.

The court in *Okoli* thus noted, that "[e]ssentially, if an investigation of what was charged in the EEOC would *necessarily* uncover other incidents that were not charged, the latter incidents could be included in a subsequent action." *Okoli*, 36 Cal. App. 4th at 1615 (emphasis added). The court found, however, that "'when the difference between the charge and the complaint is a matter of adding an entirely new basis for the alleged discrimination, neither the *Sanchez* nor *Oubichon* rule sanctions the expansion of the complaint. For instance, a complaint alleging race discrimination is neither 'like or related to' nor likely to be discovered in a 'reasonable' investigation of a charge of sex discrimination.'" *Id*. (quoting 1 Larson, Employment Discrimination (2d ed. 1994) transfer binder, § T49.11(c)(1), p. T-350).

The cases which have allowed plaintiffs to pursue claims beyond the scope of the claims alleged in DFEH or EEOC complaints have done so when the additional claims in the civil actions were like or reasonably related to the claims that were made in the administrative complaints. *Okoli*, 36 Cal. App. 4th at 1615.

11

In *Oubichon*, the plaintiff, an African-American employee, had alleged four acts of racial discrimination between September 1966 and May 1967. *Oubichon*, 482 F.2d at 570. In March 1967, after the first alleged incident but before the other three incidents occurred, the plaintiff filed a complaint with the EEOC for racial discrimination. *Id*. The defendant sought to bar the judicial complaint on the three later incidents which occurred while the EEOC investigation was still pending, arguing that the court lacked subject matter jurisdiction. *Id* at 571. The Ninth Circuit disagreed, finding that "the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Id*. The court determined that requiring the filing of a new EEOC claim for each subsequent act of discrimination was unnecessary. "To force an employee to return to the state agency every time he claims a new instance of discrimination in order to have the EEOC and the courts consider the subsequent incidents along with the original ones would erect a needless procedural barrier." *Id*. As such, the policy objective in *Oubichon* was to allow subsequent acts that arise out of the same chain of related incidents to be actionable if the later incidents are under the umbrella of the first incident and are "like or reasonably related" to the first incident. *Id*.

Similarly in *Baker*, the court allowed the plaintiff to pursue claims not included in his DFEH charge that were reasonably related to the claim filed. The plaintiff was an African-American college student who worked part time at a hospital. *Baker*, 209 Cal. App. 3d at 1060. During the school year he worked only on weekends, but during the summer he was "on call" to work additional hours. *Id*. In the summer of 1984, the plaintiff requested to work additional hours, but was denied additional work. *Id*. In May 1985, the plaintiff ultimately filed a charge of discrimination with the DFEH, alleging that his was a victim of racial discrimination during the summer of 1984. *Id*. The DFEH issued a "right to sue" letter, and plaintiff and five others filed a suit alleging "generally that [defendants] harassed them, subjected them to differential treatment and biased evaluations, engaged in racial epithets, and denied them equal opportunities for promotions and pay raises based on race." *Id*. at 1061. The plaintiffs also alleged that defendants "threatened to discipline them if they filed an internal grievance based on civil rights violations, and that after they filed their internal grievance,

[plaintiffs' supervisor] retaliated against them by increasing their work load and falsely reprimanding them." *Id*.

The defendants in *Baker* argued that plaintiffs were barred from asserting a claim outside of the discrimination claim raised in the DFEH complaint. The court disagreed, finding that the "allegations of harassment and differential treatment encompass the allegations of discrimination in his DFEH complaint. Moreover, it is reasonable that an investigation of the allegations in the original DFEH complaint would lead to the investigation of subsequent discriminatory acts undertaken by respondents in retaliation for appellant's filing an internal grievance." *Id* at 1065. As such, the count concluded that plaintiff's additional claims, including the harassment claim, were "not barred by the exhaustion doctrine." *Id*.

In *Okoli*, the court considered *Sanchez*, *Oubichon*, and *Baker* but concluded that based on the facts of that case, the "added claims . . . were neither like nor reasonably related to his DFEH claim and were not likely to be uncovered in the course of a DFEH investigation"; the claims were thus "barred by the exhaustion of remedies doctrine." *Okoli*, 36 Cal. App. 4th at 1617. The plaintiff filed a charge of racial discrimination with the DFEH in May 1988, based on denial of promotion, disparate treatment, and harassment. *Id*. at 1609-10. The DFEH investigated the claim and issued a right to sue letter. *Id* at 1610. The plaintiff filed a complaint for racial discrimination, racial harassment, and retaliation under the FEHA. *Id*. The court found that the plaintiff's retaliation claim was barred for failing to exhaust his administrative remedies because the DFEH never received the opportunity to pursue this additional theory as it occurred after the filing of the DFEH charge and would not have arisen during the course of an investigation. *Id*. at 1617. The *Okoli* court found that the DFEH was "put on notice of . . . specific charges" and that "'the more specific the original charge, the less likely that expansion into other areas will be allowed.'" *Id*. at 1617 (quoting 1 Larson, Employment Discrimination, supra, transfer binder, § T49.11(c)(1), p. T-352). As such, the court found that because the plaintiff's "complaint added claims that were neither like nor reasonably related to his DFEH claim and were not likely to be uncovered in the course of a DFEH investigation, his [additional] claim is barred by the exhaustion of remedies doctrine." *Id*.

Likewise in *Yurick v. Superior Court*, 209 Cal. App. 3d 1116 (1989), the court held that the plaintiff's age discrimination claim should be dismissed due to her failure to exhaust administrative remedies as to that claim. *Id.* at 1123. Plaintiff's administrative charge named only the employer and only alleged sex discrimination. *Id.* at 1121. "The administrative charge, filed almost a year before the alleged age harassment by [her supervisor] commenced, did not allege either a pattern of discrimination or continuous retaliation. Moreover, plaintiff did not amend her administrative charge to include the allegation of age harassment or any other subsequent event." *Id.* at 1122. The court concluded that "plaintiff's claim of gender discrimination alleged in her administrative charge did not encompass the cause of action for age harassment alleged . . . in her lawsuit." *Id.* at 1123.[3]

      **e.    Plaintiff Does Not Identify How an Investigation of Plaintiff's Discrimination Claim Would Lead to a Discovery of Murphy's Alleged Harassment**

For a claim that was not alleged in the DFEH or EEOC complaints to survive, that claim must be reasonably related and arise out of the alleged claims. Here, it is not clear how Plaintiff's alleged harassment claim against Murphy is reasonably related to the discrimination claims she filed with the DFEH and EEOC.

Discrimination and harassment are two separate claims under the FEHA. *Roby*, 47 Cal. 4th at 706 ("[D]iscrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace.").

> [H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. . . . [C]ommonly necessary personnel

---

[3] Defendants rely heavily on the First Circuit case *Lattimore v. Polaroid Corp.*, 99 F.3d 456 (1st Cir. 1996) for the holding that "an employee did not exhaust his administrative obligation when he failed to assert a harassment claim in addition to his discriminatory termination claim in his administrative charge." (Doc. 13, Opp., 5:13-15.) The Court is perplexed as to why Defendants are relying so heavily on a First Circuit case when there are Ninth Circuit and California authorities directly on point, such as the cases cited here. Nevertheless, *Lattimore* stands for the same proposition as the Ninth Circuit and California cases, which is that "[t]he scope of the civil complaint is ... limited by the charge filed with the EEOC and *the investigation which can reasonably be expected to grow out of that charge*." *Lattimore*, 99 F.3d at 464 (citation omitted) (emphasis added). In *Lattimore*, the court considered the facts of the case and determined that the plaintiff's "harassment claims were not reasonably within the scope of an agency investigation of [his] administrative charge." *Id.*

> management actions . . . do not come within the meaning of harassment. . . . These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. . . . This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

*Id*. (citing *Reno*, 18 Cal. 4th at 645-47) (internal quotations omitted).

Plaintiff relies on *Roby* for the assertion that "[a]lthough discrimination and harassment are separate wrongs, they are sometimes closely interrelated, and even overlapping, particularly with regard to proof." *Id*. at 707. Plaintiff thus argues that "[i]t is difficult to see how the EEOC or DFEH, in investigating the claims of sex, age and disability discrimination, could ignore evidence of harassment based upon sex, age and disability." (Doc. 9, 4:25-26.) *Roby*, however, does not deal with the plaintiff's failure to exhaust administrative remedies but instead deals with whether the trial court erred in allocating the evidence between the harassment and discrimination claims and, based on that allocation, finding insufficient evidence to support a harassment verdict. *Id*. at 705. The *Roby* court was considering a question concerning evidentiary proof at trial. This finding does not relate to the question presented in the instant motion – whether Murphy's alleged harassment is reasonably related to the allegations asserted in Plaintiff's administrative complaints.

Here, Plaintiff's claims in the DFEH and EEOC complaints do not reasonably relate to the claim of harassment against Murphy in the judicial complaint. At the hearing held on this motion, beyond conceding that harassment was not alleged in the administrative complaints, Plaintiff's counsel was unable to articulate or point to any harassing conduct alleged in the judicial complaint. While Plaintiff's counsel noted that the complaint indicated that Plaintiff received "ridicule" from Red Robin "employees who knew about her confidential situation as it related to her suspension" (Compl., ¶ 10), this allegation does not appear to lie against Murphy; further, it is unclear how this alleged "ridicule" rose to the level of harassment.

Plaintiff's counsel argued that Plaintiff was subjected to sexual harassment, but the complaint does not allege any sexual harassment by Murphy. Plaintiff alleges that she was informed that she should "not hire female employees that did not fit the 'profile'" of "'fit girls'" who were "'cute'" and "'young.'" (Compl., ¶ 10.) While this may be discriminatory conduct, Plaintiff fails to establish how this was harassment on Murphy's part. This is especially true in light of the fact that Plaintiff alleges

15

that she purposefully hired a female employee who did not fit the "'profile'" in order to "[t]ak[e] a stand in her management position." (Compl., ¶ 10.) Plaintiff then trained that employee and alleges that "she is still employed with [Red Robin] to date." (Compl., ¶ 10.)

Plaintiff's complaint provides examples of alleged "conduct engaged in Murphy and others," including "giving incorrect or negative reports regarding" Plaintiff's performance; making "unsubstantiated accusations that plaintiff broke into a co-worker's home," "inappropriately involving plaintiff in activities that exceed her job requirements and constituted discrimination and harassment on the plaintiff based on her sex" (Plaintiff, however, does not provide examples of this purported harassment), "requiring Plaintiff to act as a 'manager' outside of the restaurant in relation to the use of alcohol and marijuana by co-workers at parties, sporting events, etc.," asking "inappropriate questions regarding plaintiff's mental status and ability to work while using prescription medications," insulting and ridiculing Plaintiff "regarding the need for a companion dog based on her mental disability," inciting Plaintiff's "colleagues and managers to ostracize plaintiff whenever possible based upon her mental disability, age and/or sex," coercing Plaintiff to "drink alcohol on a frequent basis at 'company' related events," and coercing Plaintiff's "20[-]year[-]old daughter to drink tequila . . . knowing that she was the designated driver for plaintiff." (Compl., ¶ 11.)

Plaintiff makes no allegations, however, that Murphy singled her out or had personal motives against her. While much of this purported conduct may indicate troubling behavior, Plaintiff does not set forth how this was harassment.[4]  Further, even broadly construing Plaintiff's complaint as asserting harassing conduct by Murphy, it is unclear how that alleged conduct is reasonably related to the allegations made in the DFEH and EEOC complaints. Plaintiff's administrative complaints

---

[4] Plaintiff's further alleges that Murphy encouraged her, as well as other employees, to heavily consume alcohol. For example, Plaintiff alleges that, after Murphy became her supervisor, "there was an increase of work related meetings, events and parties outside of the restaurant with Murphy being the main organizer of said meetings, sporting events and parties." (Compl., ¶ 10.) On more than one occasion, employees "were so intoxicated that they fell to the ground, had to be carried out of parties, and were asked to leave hotels because of their intoxicated behaviors." (Compl., ¶ 10.) Plaintiff had to assist her intoxicated coworkers during these meetings. (Compl., ¶ 10.) Female employees were "precluded" from certain events unless they could prove they could "'drink like a man.'" (Compl., ¶ 10.) Plaintiff alleges that she "never tried tequila shots at all until Murphy introduced her to them and encouraged her to drink the tequila." (Compl., ¶ 10.) While these examples may indicate troubling behavior, it is not clear how Plaintiff was actually harassed.

16

make allegations against Murphy which relate to his duties as her supervisor; as noted above, "personnel management actions . . . do not come within the meaning of harassment."[5] *Roby*, 47 Cal. 4th at 706.

None of the allegations in the DFEH and EEOC complaints deal with Murphy's actions related to drinking, parties, or Plaintiff's inability to hire women. As such, none of the allegations in the judicial complaint would be reasonably related to the allegations in the administrative complaints and thus subject to discovery during an investigation by the EEOC and the DFEH. The closest claim that Plaintiff makes in the judicial complaint regarding harassment that may be related to the administrative complaints is her allegation that she was "insulted and ridiculed . . . regarding her need for a companion dog based upon her mental disability." (Compl., ¶ 11(f).) It is unclear whether this was an isolated incident; Plaintiff does not allege that there was any frequency to this conduct that rose to the level of harassment. Finally, this allegation is not reasonably related to the allegations in the administrative complaints. While the administrative complaints state that Murphy was "adamant" concerning her need for disability accommodations, the nature of these accommodations is unclear and there was no mention in the administrative complaints regarding Plaintiff's need for a companion dog. (Doc. 10, Tomlin Decl., ¶¶ 4, 6, Exhs. 1, 3.)

Finally, the Court notes that Plaintiff filed her administrative claims after her termination. As such, Plaintiff was aware of all the events which occurred while employed at Red Robin and had all the facts in her possession at the time she filed her administrative complaints. Plaintiff's administrative complaints failed to include harassment claims and only pled claims for discrimination.

   **f.**  **Conclusion - Plaintiff's Fifth Cause of Action Against Murphy Fails**

---

[5] Specifically, Plaintiff alleges in the administrative complaints that Murphy was conducting an "interview[]" with Plaintiff "concerning [the] investigation" into her "work conduct." (Doc. 10, Tomlin Decl., ¶¶ 4, 6, Exhs. 1, 3.) During that interview, "a question came up that concerned [her] disability" and her "employer's requirement[] to accommodate [her] disabilities." (Doc. 10, Tomlin Decl., ¶¶ 4, 6, Exhs. 1, 3.) After Plaintiff provided them with a copy of the American with Disabilities Act, Murphy and Red Robin's vice president "terminated [Plaintiff's] employment for work policy violations." (Doc. 10, Tomlin Decl., ¶¶ 4, 6, Exhs. 1, 3.) These are the extent of Plaintiff's allegations against Murphy in the administrative complaints, all of which relate to him acting in a supervisory capacity and conducting actions in connection with personnel management.

For Plaintiff's harassment claim against Murphy to survive, the harassment claim must be reasonably related to and arise out of the discrimination claims alleged in the DFEH and EEOC complaints. Plaintiff fails to clearly plead a harassment claim against Murphy in her judicial complaint and fails to indicate how Murphy's alleged conduct pled in her judicial complaint is related to the charges asserted in her administrative complaints. As such, Plaintiff failed to exhaust her administrative remedies regarding the harassment claim against Murphy, and the Court has no jurisdiction over that claim.

### 3. Plaintiff's Sixth Cause of Action Against Murphy for Failure to Prevent Discrimination and Harassment Fails as a Matter of Law

Plaintiff also pleads her sixth cause of action against Murphy for failure to prevent discrimination, harassment, retaliation, and hostility in the workplace pursuant to California Government Code Section 12940(k), which provides that it is unlawful "[f]or an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). Section 12940(k) does not provide for individual liability for failure to prevent harassment. Further, "a supervisory employee owes no duty to his or her subordinates to prevent sexual harassment in the workplace. That is a duty owed only by the employer." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996); *see also Jones*, 42 Cal. 4th at 1173 ("[W]e conclude that the employer is liable for retaliation under section 12940, subdivision (h), but nonemployer individuals are not personally liable for their role in that retaliation.").[6]

As indicated above, Plaintiff has not shown that she has a viable harassment claim against Murphy, nor has she shown that Murphy had a duty to prevent discrimination or harassment against Plaintiff. As such, Plaintiff's sixth cause of action against Murphy fails.

### 4. Conclusion - Removal was Proper

---

[6] The court in *Jones* also found that when, like here, it has been determined that an individual defendant is not liable for harassment under Section 12940(h), there is no personal liability under Section 12940(k) for retaliating against someone who opposes or reports that same alleged harassment. *See Jones*, 42 Cal. 4th at 1168.

For the reasons set forth above, Murphy is a sham defendant for purposes of the diversity determination. His citizenship should be disregarded. Accordingly, Defendant's removal was proper. The Court thus RECOMMENDS that the claims against Murphy be DISMISSED and Plaintiff's motion to remand be DENIED.

### III. CONCLUSION AND RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1. The claim for harassment and the claim for failure to prevent discrimination, harassment, hostility in the workplace, and retaliation be DISMISSED as to Defendant Murphy; and

2. Plaintiffs' Motion for Remand be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty (20) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed, and served on all parties, within fourteen (14) days after service of the objections. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 17, 2011**              /s/ Sheila K. Oberto
                                            UNITED STATES MAGISTRATE JUDGE